NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

---

|  |  |
|---|---|
| JOSEPH PIETRANGELO, | : |
| | : |
| Plaintiff, | :      Civ. No. 04-3223 (GEB) |
| | : |
| v. | : |
| | :      **MEMORANDUM OPINION** |
| NUI CORPORATION, et al., | : |
| | : |
| Defendants. | : |
| | : |

---

**BROWN, District Judge**

This matter comes before the Court upon the Defendants' motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331. The Court, having considered the parties' submissions and decided the matter without oral argument pursuant to Fed. R. Civ. P. 78, and for the reasons set forth below, will grant Defendants' motion in part and deny in part. Plaintiff is granted thirty (30) days leave to amend the Complaint to cure the deficiencies addressed in this Memorandum Opinion.

I.      BACKGROUND

    A.      Parties and Allegations

Plaintiff, Joseph Pietrangelo ("Plaintiff"), an employee of defendant NUI Corp. ("NUI"), alleges that NUI, NUI's Board of Directors ("the Board"), the Board's Investment Committee ("Committee") and certain members of the Board and the Committee ("the Individual

Defendants")[1], breached their fiduciary duties to participants in two NUI sponsored employee pension benefit plans – the NUI Corporation Savings and Investment Plan and Investment Plan for Collective Bargaining Employees ("the CBE Plan") and the NUI Corporation Savings and Investment Plan ("the Salaried Plan") (collectively, "the Plans") – in violation of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1132 et al.

In his seventy-seven (77) page, one hundred seventy (170) paragraph complaint ("the Complaint"), Plaintiff alleges that Defendants: (1) breached their fiduciary duties of prudence and loyalty to plan participants imposed by ERISA Section 404 by failing to diverge from plan documents and continuing to invest in NUI stock even though they knew or should have known that NUI stock was artificially inflated as a result of fraudulent activity and accounting improprieties (Count I); (2) failed to monitor the Plans and fiduciaries of the Plans and failed to provide them with material information necessary to assess whether it was prudent to continue offering NUI stock as an investment option (Count II); (3) failed to provide complete and accurate information to the Plans' participants and beneficiaries (and the investing public at large) and/or conveyed false and misleading information regarding NUI's financial vitality and the prudence of investing in NUI stock (Count III); (4) failed to act exclusively in the interests of the Plans in violation of ERISA Section 404 and 405 by, inter alia, failing to engage independent fiduciaries to administer the Plans, placing the interests of NUI and themselves above the interests of the Plans'

_____

[1]All defendants will be referred to collectively as "Defendants."  The Individual Defendants include: John Kean ("Kean"), John Kean, Jr. ("Kean, Jr.), Mark Abramovic ("Abramovic"), James R. Van Horn, Thomas W. Williams, Charles N. Garber, James J. Forese, Vera King Farris, J. Russell Hawkins, Bernard S. Lee, R.V. Whisnand and John Winthrop. Certain of the Individual Defendants are alleged to have served in various roles and on various different committees including, inter alia, the Board, the Committee, the Board's Audit Committee and the the NUI Executive Committee.  See Compl. ¶ 18.

2

participants and beneficiaries and failing to take other action necessary to protect the Plans'
(Count IV); and engaged in prohibited transactions in violation of ERISA Section 406 by
continuing to invest and/or allowing the Plans' fiduciaries to invest in NUI common stock despite
knowledge or constructive knowledge that NUI stock was artificially inflated (Count V).
Defendant brings this action on behalf of himself and a putative class of participants in the Plans.[2]

    B.    The Securities Class Action

    This action shares many, if not most, of the same factual allegations as the securities fraud
class action ("the securities action") currently pending before this Court, In re NUI Securities
Litigation, Civil Action No. 02-5220 (MLC).  The Court will briefly summarize the allegations in
the securities action to provide a factual backdrop for the allegations in this action.

    In the securities action, the plaintiffs, on behalf of a putative class of purchasers of NUI
securities between November 8, 2001, and October 17, 2002 ("the Class Period), alleged that NUI
and various other defendants failed "'to disclose known risks regarding [NUI's] business and
issued false and misleading statements about its businesses, current and future financial prospects
and results, causing NUI's stock to trade at artificially inflated levels during the Class Period.'"  In
re NUI Securities Litigation, 314 F. Supp. 2d 388, 396 (D.N.J. 2004) (granting in part and denying
in part defendants' motion to dismiss) (citing the Securities Complaint at ¶ 3).  The plaintiffs
alleged, just as they do here (albeit in varying degree and specificity), that the "defendants
intentionally inflated NUI's earnings by (1) making misleading statements concerning, and failing
to properly record, NUI's true bad debt levels . . . and (2) pursuing illegal telecommunications

_____

    [2]As the Court will discuss infra, Plaintiff does not allege, nor can he demonstrate, that he
was a "participant" in the Salaried Plan.

billing practices ("reterminating" or "retermination")."   In re NUI, 314 F. Supp. 2d at 396.   The plaintiffs commenced the securities action after NUI's stock price plummeted following the company's announcement that it would sustain drastically reduced earnings in 2002, contrary to previously issued market forecasts and guidance.   Id.

The Court notes that the Complaint in this case is not identical to its counterpart in the securities action.   Putting aside that the claims are obviously asserted on different legal bases, Plaintiff points out that the Complaint in this case also includes allegations regarding an audit performed by the State of New Jersey that allegedly revealed pervasive operative problems at NUI.   See Pl. Opp. Br. at 3 n.2.

C.      The Plans

Both plans are "defined contribution plans."[3]   Compl. ¶20.   Under the Plans, participants could choose to invest their contributions among eight (8) funds.   Id.   One of the funds, the "NUI Stock Fund," was comprised entirely of NUI common stock.   Participants could choose to invest in this fund but were not required to.   Id.   Both Plans provided:

> Each participant shall be solely responsible for the selection of his or her Investment Fund choices.   No fiduciary with respect to the Plan is empowered to advise a Participant as to the manner in which his or her Accounts are to be invested, and the fact that an Investment Fund is offered shall not be construed to be a recommendation for investment.

---

[3]"A defined contribution plan 'provides for an individual account for each participant and for benefits based solely upon the amount contributed to the participants account.'"   See Hughes Aircraft Co. v. Jacobsen, 525 U.S. 432, 439 (1999) (citing ERISA §3(34); 29 U.S.C. §1002(34)). In contrast, a defined benefit plan "consists of a general pool of assets rather than individual dedicated accounts."   Hughes, 525 U.S. at 439.   With a defined benefit plan, an employee "is entitled to a fixed periodic payment" upon retirement.   Id. (citations omitted).   The parties are in agreement that the Plans are defined contribution plans.

See Plans at Art. 7.3 (attached as Exhibits to Defendants' Declaration in Support of the Motion to Dismiss). Based on participants' contributions, NUI would contribute a certain amount of matching funds. Id. at ¶21. NUI's matching contributions were made exclusively in the NUI Stock Fund. Id. at ¶22. For example, with respect to the CBE Plan, "NUI matched 40% of each employee's contribution up to 6% of the employee's annual base salary, on contributions invested in options other than NUI stock, and up to 50% of the employee's contribution up to a maximum of 8% of the employee's annual base salary on any contributions invested in NUI stock."[4]

II.   ANALYSIS

A.   Standard for a Motion to Dismiss

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) may be granted only if, accepting all well-pleaded allegations in the complaint as true, and viewing them in the light most favorable to plaintiff, plaintiff is not entitled to relief. Oran v. Stafford, 226 F.3d 275, 279 (3d Cir. 2000); Langford v. City of Atl. City, 235 F.3d 845, 850 (3d Cir. 2000); Bartholomew v. Fischl, 782 F.2d 1148, 1152 (3d Cir. 1986). The Court may not dismiss a complaint unless plaintiff can prove no set of facts that would entitle him to relief. Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Angelastro v. Prudential-Bache Sec., Inc., 764 F.2d 939, 944 (3d Cir. 1985), cert. denied, 474 U.S. 935 (1985). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416 U.S. 232,

_____

[4]Plaintiff argues that NUI's higher contribution percentage with respect to participant investments in the NUI Stock Fund evidences that the Plan, by its very terms, encouraged employees to invest in NUI stock. See Compl. at ¶22. The Court notes that these percentages changed to 50% and 6% for contributions in non-NUI stock funds and 60% and 8% for contributions in the NUI Stock Fund, respectively, in 2002. Id. at ¶25. Plaintiff argues that this created further incentive for investment in the NUI Stock Fund in 2002.

236 (1974).

Under Rule 12(b)(6), the Court must "accept the allegations in the complaint as true, and draw all reasonable factual inferences in favor of the plaintiff.  [The motion can be granted] only if no relief could be granted under any set of facts that could be proved."  Turbe v. Gov't of the V.I., 938 F.2d 427, 428 (3d Cir. 1991) (citing Unger v. Nat'l Residents Matching Program, 928 F.2d 1392, 1394-95 (3d Cir. 1991)); see also Langford, 235 F.3d at 850; Dykes v. SE. Pa. Transp. Auth., 68 F.3d 1564, 1565, n.1 (3d Cir. 1995), cert. denied, 517 U.S. 1142 (1996); Piecknick v. Commw. of Pa., 36 F.3d 1250, 1255 (3d Cir. 1994); Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir.1994).  A complaint may be dismissed for failure to state a claim where it appears beyond any doubt "that no relief could be granted under any set of facts that could be proved consistent with the allegations."  Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).

A complaint should not be dismissed unless it appears beyond doubt that "the facts alleged in the complaint, even if true, fail to support the claim."  Ransom v. Marrazzo, 848 F.2d 398, 401 (3d Cir. 1988).  Legal conclusions made in the guise of factual allegations, however, are given no presumption of truthfulness.  Papasan v. Allain, 478 U.S. 265, 286 (1986); see also Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir.1997) ( "[A] court need not credit a complaint's 'bald assertions' or 'legal conclusions' when deciding a motion to dismiss.").

The Court may consider "the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim."  Lum v. Bank of America, 361 F.3d 217, 222 n.3 (3d Cir. 2004).  Several courts have held that plan documents may be considered when ruling on a motion to dismiss an ERISA complaint.  See e.g., In re Duke

Energy ERISA Litig., 281 F. Supp. 2d 786, 789 n.3 (W.D.N.C. 2003) ("When ruling on a motion

to dismiss, the court may properly consider the Plan document in its entirety."); Hull v. Policy

Mgmt. Sys. Corp., 2001 U.S. Dist. LEXIS 22343 22343, *3-4 (D.S.C. Feb. 9, 2001) (holding that

when the plaintiff relies on Plan language "it is proper for the court to consider language

contained in the Plan documents even though the plan is not attached to or incorporated into the

complaint").  Accordingly, this Court will consider the Plans' documents in determining whether

Plaintiff has sufficiently alleged Defendants' fiduciary status.

> B.   The Federal Securities Laws Do Not Shield The Defendants From Liability

Defendants argue that Plaintiff's claims fail as a matter of law because complying with the

alleged fiduciary duties would require the Defendant's to violate insider trading laws.[5]  See Def.

Br. at 30 ("Had any Defendant taken action based upon its alleged knowledge of the purported

misrepresentations at issue, such Defendant would have violated federal securities laws.").  This

argument is without merit.

Recent decisions suggest a growing consensus that there is no conflict between the

requirements of ERISA and federal securities laws.  For example, in Enron, the court stated:

> As a matter of public policy, [ERISA and the federal securities
> laws] should be construed not to cancel out the disclosure
> obligations under both statutes or to mandate concealment, which
> would only serve to make the harm more widespread; the statutes
> should be construed to require, as they do, disclosure by [company]
> officials and plan fiduciaries of [the company's] concealed, material
> financial status to the investing public generally, including plan

---

[5]Defendants rely on two unpublished district court cases to support their position: In re
McKesson HBOC, Inc. ERISA Litig., 2002 WL 31431588 (N.D. Cal. Sept. 30, 2002) (get Lexis
cite), and Hull, 2001 U.S. Dist. LEXIS 22343.  Recent cases, however, have explicitly rejected
the reasoning of McKesson and Hull.  See e.g. In re Enron, 284 F. Supp. 2d at 564-567 (rejecting
McKesson's discussion of the interplay between ERISA and the securities laws as "misguided").

> participants, whether "impractical" or not, because continued
> silence and deceit would only encourage the alleged fraud and
> increase the extent of the injury.[6]

In re Enron, 284 F. Supp. 2d at 565; see also In re AEP ERISA Litig., 327 F. Supp. 2d 812, 823-

24 (E.D. Ohio 2004) (rejecting argument that to comply with ERISA defendants would have to

violate federal securities laws); Kling v. Fidelity Mgmt. Trust Co., 323 F. Supp. 2d 132, 143 n.10

(same); In re Xcel Energy, Inc. Secs., Deriv. & ERISA Litig., 312 F. Supp. 2d 1165, 1181-82 (D.

Minn. 2004) (same); In re CMS Energy ERISA Litig., 312 F. Supp. 2d 898, 915 (E.D. Mich.

2004) (same); In re Elec. Data Sys. Corp. ERISA Litig., 305 F. Supp. 2d 658, 673 (E.D. Tex.

2004); Rankin v. Rotts, 278 F. Supp. 2d 853, 873-78 (E.D. Mich. 2003) (same).  Therefore, this

Court concludes that the duties imposed by ERISA and the securities laws must be construed

congruently.  To hold otherwise would undermine the very purposes of ERISA, i.e. encouraging

employers to offer ERISA benefits and protecting participants and beneficiaries.

Further, Defendants argument that Plaintiff cannot prove damages "because there is no

way in an efficient market for a fiduciary to avoid a loss following a corrective disclosure" cannot

succeed.  See Pl. Br. at 10.  At this stage of the proceedings, the Court finds that Plaintiff's

allegations that the Plan suffered damages as a result of Defendants' breaches are sufficient.  See

e.g. In re Honeywell Intl Sec. Litig., 2004 U.S. Dist. LEXIS 21585, *42 (D.N.J. Sept. 14, 2004

(holding that efficient market theory arguments, "because they raise issues of causation and

damages, . . . are essentially fact-based arguments inappropriate on a motion to dismiss.").

Moreover, Defendants' could have minimized Plan losses without disclosing adverse information

---

[6]The Court is not persuaded by Defendants' argument that the Enron court's reasoning cannot be applied because this case is not a "mega-fraud case" like Enron.  See Def. Br. at 31. For the reasons discussed above, the Court finds the Enron court's reasoning persuasive.

by simply removing NUI stock as an investment option.  See Enron, 284 F. Supp. 2d at 566.

Accordingly, this Court holds that the federal securities laws do not shield the Defendants from

liability for their alleged breaches.

      C.      Plaintiff Has Sufficiently Pled That The Defendants Are ERISA Fiduciaries

      Under ERISA, fiduciaries may be either named by the plan or they may qualify as

fiduciaries if they have discretionary authority.[7]  See 29 U.S.C. §§ 1102(a)(1), 1002(a)(21(A)

(2005).  ERISA provides, inter alia, that "a person is a fiduciary with respect to a plan to the

extent (i) he exercises any discretionary authority or control respecting management or disposition

of its assets."  29 U.S.C. § 1002(21)(A)(I) (2005).  Basically, "one is an ERISA fiduciary only to

the extent that one has discretion."  In re Ikon Office Solutions, Inc. Sec. Litig., 86 F. Supp. 2d

481, 490 (E.D. Pa. 2000).  Therefore, an individual may qualify as a fiduciary with respect to

certain actions, but not with respect to others.  See Hull, 2001 U.S. Dist. LEXIS at *11 (citing

Akers v. Palmer, 71 F.3d 226, 230 (6th Cir. 1995)).  For this reason, determination of a defendants

fiduciary status is a highly fact intensive inquiry.[8]

      Defendants argue that "the Plans make clear that fiduciary functions under the Plans,

including investment decisions, were delegated to the Savings and Investment Plan Committee."

Def. Br. at 14.  The Court will address separately whether Plaintiff has sufficiently pled the

---

    [7]As discussed above, the Court may consider the Plans' documents in determining the sufficiency of Plaintiff's allegations.

    [8]Plaintiff contends that fiduciary status is not amenable to final disposition on a motion to dismiss and cites to a litany of cases as persuasive authority.  See Pl. Opp. Br. at 8 (citing In re Enron, 284 F. Supp. 2d at 665; In re ADC Telecoms, Inc., 2004 U.S. Dist. LEXIS 14383, *18 (D. Minn. July 26, 2004); In re AEP, 327 F. Supp. 2d at 827.  The Third Circuit has not addressed this issue.  Because this Court finds that Plaintiff's allegations are sufficient to withstand the instant motion, the Court need not address this issue.

fiduciary status of  NUI Corp., the Committee, the Board of Directors and the Individual Defendants.[9]

       1.    *NUI*

Defendants, relying on <u>Crowley v. Corning, Inc.</u>, 234 F. Supp. 2d 222 (W.D.N.Y. 2002), contend that it is appropriate to determine fiduciary status on a motion to dismiss where, as here, relevant plan documents contradict such allegations.  <u>See</u> Def. Reply Br. at 4 (citing <u>Crowley</u>, 234 F. Supp. 2d at 228).  Defendants argue that, although the Plan designates NUI as a fiduciary (Art. 15.1), the Plan delegates all of NUI's fiduciary functions – including its authority over investment decisions – to the Savings and Investment Plan Committee (Art. 15.6).  Essentially, Defendants argue that a company's delegation of authority in Plan documents is conclusive proof that the company may not, under any circumstances, be considered to have acted in a fiduciary capacity.  The Court disagrees.

First, the Court notes that Plaintiff has alleged that NUI did not sufficiently delegate its fiduciary responsibilities.  In paragraph 28, Plaintiff states that "NUI did not delegate fiduciary responsibilities for the Plan to an external provider.  Instead, Defendants chose to . . . internaliz[e] the fiduciary functions."  Compl. ¶ 28.   Plaintiff further alleges that NUI "had the authority and discretion to appoint, monitor, and remove" ERISA fiduciaries and exercised effective control over their activities.  Compl. ¶¶ 15 and 16.  These allegations, construed in a light most favorable

---

      [9]The Court is mindful that the circumstances of alleged breaches of fiduciary duty can be difficult to identify without the benefit of discovery, often because relevant facts are in the exclusive possession of the breaching fiduciary.  <u>See</u> <u>Concha v. London</u>, 62 F.3d 1493, 1503 (9th Cir. 1995).  At this stage of the proceedings, Plaintiff is not expected to allege all of the specifics of each defendants breach.  The Court will address whether Plaintiff has generally pled sufficient facts to demonstrate that each defendant qualifies as a fiduciary.  Discovery may reveal that these defendants are only fiduciaries with respect to certain conduct.

to Plaintiff, sufficiently allege that NUI did not effectively delegate its fiduciary responsibilities and exercised discretionary authority over the Plan during the class period.  See e.g. CMS, 312 F. Supp. 2d at 909 and 911 (discussing ambiguities in the plan documents); In re Electronic Data Sys. Corp. ERISA Litig., 305 F. Supp. 2d at 665-66 ("Plan documents do not effectively delegate the named fiduciaries duties to other persons or entities.").

Further, as discussed above, a defendant may assume a fiduciary role through his or her actions even though they are not designated as a fiduciary by the plan documents.  Thus, allegations of functional fiduciary status are sufficient to withstand a motion to dismiss in spite of plan documents to the contrary.  For example, in Ikon, the court determined that, in light of allegations that the employer made misrepresentations about plan benefits, "it is premature to rule that Ikon did not act or could not have acted as a fiduciary" even though the company was not named as a plan administrator. Ikon, 86 F. Supp. 2d at 491; see also Honeywell, 2004 U.S. Dist. LEXIS 21585, *34 n.14 ("It is true that with respect to some of the Defendants fiduciary capacity is alleged in very broad terms that essentially follow the appropriate statutory language.  But at this stage such allegations, unless squarely refuted by Plaintiffs' own pleading or by documents essential to their claims, are sufficient.").

Specifically, Plaintiff has alleged that NUI made affirmative misrepresentations to the public through SEC filings.  Defendants counter that such statements were made when NUI was wearing its "publicly traded company hat," rather than its "plan administrator hat."  See Def. Br. at 27.  Addressing the "two hat" doctrine, the Third Circuit has stated:

> [W]here an administrator of a plan decides matters required in plan
> administration or involving obligations imposed upon the
> administrator by the plan, the fiduciary duties imposed by ERISA

> attach.  Where, however, employers conduct businesses and make
> business decisions not regulated by ERISA, no fiduciary duties
> apply.  And when employers wear two hats as employers and as
> administrators . . . they assume fiduciary duties only when and to
> the extent that they function in their capacity as plan administrators,
> not when they conduct business that is not regulated by ERISA
> (citations omitted).

Payonk v. HMW Industries, Inc., 883 F. 2d 221, 225 (3d Cir. 1989).  Further, SEC filings are not

automatically to be considered ERISA communications, thereby transforming their authors into

ERISA fiduciaries, simply because the statements are accessible to plan participants as members

of the investing public.  See Honeywell, 2004 U.S. Dist. LEXIS 21585 at * 30 (citing Varity v.

Howe, 516 U.S. 489 (1996)).

In the present case, however, the Complaint alleges that NUI made direct and indirect

communications with Plan participants including, but not limited to, "SEC filings, annual reports,

press releases, and *Plan-related documents which incorporated and/or reiterated these*

*statements*."  Compl. ¶ 30 (emphasis added); see Honeywell, 2004 U.S. Dist. LEXIS 21585 at

*30-34 ("Defendants' argument [that SEC filings are not necessarily ERISA fiduciary

communications] is persuasive with respect to communications that were neither specifically

addressed to Plan participants *nor incorporated, by reference into such communications*.")

(emphasis added).  Further, the Supreme Court has made clear that once an ERISA fiduciary

decides to make representations or provide information on Plan investments, it must provide true,

accurate and complete information.[10]  See Varity, 516 U.S. at 506-07; see also In re Unisys Sav.

---

[10]The Third Circuit has also held that a plan fiduciary has "'an affirmative duty to inform
when the [fiduciary] knows that silence might be harmful.'" Adams v. Freedom Forge Corp., 204
F.3d 475, 480 (3d Cir. 2000) (quoting In re Unisys Corp. Retiree Med. Benefit "ERISA" Litig.,
57 F.3d 1255, 1262 (3d Cir. 1995), cert. denied, 517 U.S. 1103 (1996)).

Plan Litig., 74 F.3d 420, 440 (3d Cir. 1996) (holding that a fiduciary may not materially mislead those to whom the duties of loyalty and prudence are owed under ERISA).  Therefore, the Court finds that Plaintiff has sufficiently pled that NUI made misrepresentations as an ERISA fiduciary.

Accordingly, the Court concludes that the Complaint sufficiently alleges that NUI acted as an ERISA fiduciary.  However, the Court reiterates that a defendant's fiduciary status must be determined in reference to the specific fiduciary duties asserted to have been breached.  Therefore, the specific contours of each defendants' fiduciary status may be more easily resolved at a later stage.

2.    *The Committee, the Board of Directors and the Individual Defendants*

Paragraph 15.6 of the Plan states, in pertinent part: "The Company, as Administrator of the Plan, has by action of the Board of Directors appointed *a Committee* to administer the Plan on its behalf."  Compl. ¶ 15.6 (emphasis added).  The Plan itself does not specify the name of the Committee or the individual members of this Committee.  As a general matter, it seems clear that *the Committee* designated to administer the Plan and its members constitute ERISA fiduciaries.

Defendants argue, however, that Plaintiff has "sued the wrong individuals and committee." Def. Reply Brief at 7.  Relying on an NUI Proxy Statement, Plaintiff contends that the relevant committee of NUI's Board of Directors is the "Investment Committee."  From this Proxy Statement, Plaintiff derived the names of the members of the Investment Committee, who are named as individual defendants in the Complaint.[11]  Defendants contend that Plaintiff has improperly conflated the Investment Committee of the Board of Directors with "the Savings and

---

[11]The members of this committee alleged as defendants are: Farris, Hawkins, John Kean, Whisnand and Winthrop.  Pl. Opp. Br. at 13.

Investment Plan Committee," which is the actual committee that administers the Plan.  See Def.

Reply Br. at 7.  In order to cure this claimed discrepancy, the Court will grant Plaintiff leave to

amend the Complaint.

Notwithstanding this discrepancy, the Court finds that Plaintiff has sufficiently alleged that

the Board of Directors and the other Individual Defendants[12] are functional ERISA fiduciaries.

Plaintiff repeatedly alleges that the Board of Directors and the Individual Defendants exercised

discretionary authority over the Plan and the Committee during the class period.  This is sufficient

at this stage of the proceedings.  The Court reiterates that a defendant's fiduciary status must be

determined in reference to the specific fiduciary duties asserted to have been breached.  Therefore,

the specific parameters of the fiduciary duties owed by the Board of Directors and the Individual

Defendants will be better addressed at a later stage.[13]

> D.     The Court Will Not Apply The Moench Presumption For The Purposes Of This
>        Motion

Defendants contend that where, as here, a plan offers company stock as an investment

alternative and/or makes matching contributions of employer stock, plan fiduciaries continued

investment in employer stock is entitled to a presumption of reasonableness under the Third

Circuit's holding in Moench v. Robertson, 62 F.3d 553, 568 (3d Cir. 1995).  In Moench, the Third

---

[12]To the extent that Plaintiff has sued the wrong individuals as a result of allegedly suing the wrong committee, Plaintiff is granted leave to amend.

[13]The question whether Plaintiff has sufficiently alleged that the Board of Directors and each of the Individual Defendants breached specific ERISA fiduciary duties is a separate issue that cannot be addressed without differentiation between the parties and further specificity.  For the reasons discussed infra, Plaintiff has been granted leave to amend the Complaint to cure these deficiencies. The Court notes that the Complaint is devoid of allegations that the Board of Directors or the Individual Directors knew or should have known of the alleged fraudulent activity.

Circuit held that "an ESOP ([employee stock ownership plan]) fiduciary who invests the assets [of the plan] in employer stock is entitled to a presumption that it acted consistently with ERISA by virtue of that decision.  However, the plaintiff may overcome that presumption by establishing that the fiduciary abused its discretion by investing in employer securities."  Moench, 62 F.3d at 571.

Plaintiff's first contend that the Moench presumption does not apply here because the Plan is not designed primarily to invest in NUI stock and, therefore, does not qualify as an ESOP.  See id. at 568-69 ("[U]nlike the traditional pension plan governed by ERISA, ESOP assets generally are invested in securities issued by the plan's sponsoring company.") ("ESOPs, unlike pension plans, are not intended to guarantee retirement benefits, and indeed, by its very nature, an ESOP places employee retirement assets at much greater risk than does the typical diversified plan."). On the other hand, Defendants contend that the presumption of prudence can be applied to non-ESOP plans that, like the Plan at issue here, provide for investment of plan assets in company stock.  See Def. Br. at 2, citing, inter alia, Pennsylvania Federation v. Norfolk Southern Corp.Thoroughbred Retirement Investment Plan, 2004 U.S. Dist. LEXIS 1987, *22 (E.D. Pa. February 4, 2004) ("The Third Circuit based the Moench presumption on the law of trusts 'which provides where discretion is conferred upon the trustee with respect to the exercise of a power, its exercise is not subject to control by the court, except to prevent an abuse by the trustee of his discretion.' . . . Therefore, the distinction between ESOP and other types of EIAPs, such as profit sharing plans and savings plans, is irrelevant."); In re Schering-Plough Corporation ERISA Litigation, 2004 U.S. Dist. LEXIS 16265, *14 (applying Moench presumption to a similarly structured plan).

The Court need not reach this issue. "Generally, courts should not apply evidentiary standards at the motion to dismiss stage because doing so conflicts with Federal Rule of Civil Procedure 8(a)."  In re Electronic Data Sys, 305 F. Supp. 2d at 669 ("The Court holds that requiring Plaintiffs to affirmatively plead facts overcoming the ESOP presumption violates Rule 8(a)'s notice pleading requirement."); see also Ikon, 86 F. Supp. 2d at 492 ("[I]t would be premature to dismiss even a portion of the ERISA complaint without giving plaintiffs an opportunity to overcome the presumption."); see also Xcel, 312 F. Supp. 2d at 1180 ("[P]resumptions are evidentiary standards that should not be applied to motions to dismiss.") (citing Swierkewicz v. Sorema N.A., 534 U.S. 506, 512 (2002)).  Further, at this stage of the proceedings, "the application of the presumption of prudence . . . merely requires plaintiffs to allege that continued investment in the company stock constituted an abuse of discretion in light of the circumstances."  Xcel, 312 F. Supp. 2d at 1180, n.6 (citing In re McKesson, 2002 U.S. Dist. LEXIS 19473 at *6).  Count I of the Complaint states that "Defendants failed to diverge from the Plan documents and/or directives that they reasonably should have known would lead to an imprudent result or would otherwise harm Plaintiff and members of the class."  Compl. at ¶ 139. Therefore, the Court concludes that, even if it were to apply the Moench presumption, Plaintiff has pled facts sufficient to rebut the presumption at this stage of the proceedings.

> E.    Plaintiff Is Granted Leave To Amend The Complaint To Comport With Federal Rules Of Civil Procedure 8(a) And 9(b), Where Applicable

Defendants contend that Plaintiff's ERISA breach of fiduciary claims sound in fraud and, therefore, must satisfy the heightened pleading standard of Federal Rule Civil Procedure 9(b). Federal Rule of Civil Procedure 9(b) requires allegations of fraud to be pled with particularity.

See Lum v. Bank of America, 361 F.3d 217, 223 (3d Cir. 2004).  In order to comply with Rule 9(b), plaintiff must "plead with particularity the circumstances of the alleged fraud in order to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior." Id. at 223-24 (quotations omitted).  In contrast, Rule 8(a) only requires that the complaint set forth a basis for the court's jurisdiction, a short and plain statement of the claim entitling plaintiff to relief and a demand for judgment.  See FED. R. CIV. P. 8(a) (2005).  Basically, Rule 8(a) only requires that the complaint put the defendants on notice of the claims against them.  See Swierkiewicz, 534 U.S. at 513-14.

Generally, pleadings alleging breaches of fiduciary duties under ERISA are scrutinized under the notice pleading standard of Federal Rule of Civil Procedure 8(a).  See e.g. Concha, 62 F.3d at 1503 ("Rule 9(b) is not applicable in cases in which the complaint alleges breaches of fiduciary duty under ERISA, and does not allege fraud or mistake."); In re Electronic Data Sys., 305 F. Supp. 2d at 672 ("Allegations of breach of fiduciary duty are not necessarily fraud allegations."); Fink v. Nat'l Sav. & Trust Co., 772 F.2d 951, 959 (C.A.D.C. 1985).  However, courts have applied the heightened pleading standards of Rule 9(b) to ERISA breach of fiduciary claims that are predicated on allegations of fraudulent conduct.  See e.g., Thornton v. Evans, 692 F.2d 1064, 1082 (7th Cir. 1982); Ikon, 86 F. Supp. 2d at 488; Chicago District Council of Carpenters Welfare Fund v. Angulo, 169 F. Supp. 2d 880, 885-86 (N.D. Ill. 2001); Vivien v. Worldcom, 2002 U.S. Dist. LEXIS 27666, *20 (N.D. Cal. July 26, 2002).  To be clear, when breach of fiduciary claims allege that defendants failed to act reasonably in light of adverse circumstances created by the fraudulent activity of others, rather than actually participated in the

17

fraud, Rule 8(a) still applies.  See Xcel, 312 F. Supp. 2d at 1179 ("Here, plaintiffs' breach of fiduciary duty claims are premised on defendants' failure to act in light of the adverse circumstances that were hidden by the fraudulent conduct."). However, "when the alleged breach of the fiduciary is the fraudulent act," Plaintiffs are required to plead with particularity.  Xcel, 312 F. Supp. 2d 1165, 1179 (D. Minn. 2004) (emphasis added); see also In re Electronic Data Sys., 305 F. Supp. 2d at 672 ("Only breach of fiduciary duty claims which include a fraud claim implicate Rule 9(b).").

1.    Plaintiff Fails to Comply With Rule 8(a) Because The Complaint Fails To
      Differentiate Between The Defendants

Some of Plaintiff's allegations, although premised on alleged fraudulent activity at NUI, only implicate the Defendants' actions (or inactions) arising out of the adverse circumstances created by the alleged fraudulent activity at NUI rather than their actual participation in the alleged fraudulent activity.  Specifically, Plaintiff alleges that certain defendants breached their fiduciary duties of prudence and loyalty because they knew or should have known of the alleged fraudulent activity and failed to take reasonable action in their capacities as ERISA fiduciaries in light of this information.  These alleged breaches are not, in and of themselves, fraudulent; they are merely premised on alleged fraudulent activity.  See e.g., In re CMS Energy ERISA Litigation, 312 F. Supp. 2d 898, 909 (E.D. Mich. 2004) (holding that 9(b) did not apply to the plaintiffs' ERISA breach of fiduciary duty claims because the "general allegations . . . assert[ed] a breach of fiduciary duty, not an intent to deceive, as plaintiffs contend[ed]") (citing Concha, 62 F.3d at 1502); In re Xcel Energy, Inc., Securities, Derivative & "ERISA" Litigation, 312 F. Supp. 2d 1165, 1179 (D. Minn. 2004) (holding that 9(b) did not apply to plaintiff's breach of fiduciary duty

claims because they were "premised on defendants' failure to act in light of the adverse circumstances that were hidden by the fraudulent conduct" and "defendants' duty to act arose as a result of the adverse conditions, not the alleged fraud").  Therefore, the Court concludes that the vast majority of Plaintiff's complaint need only satisfy the more liberal standard of Rule 8(a).

With only a few limited exceptions (discussed <u>infra</u>), however, the Complaint fails to satisfy even the liberal notice pleading standard of Rule 8(a) because Plaintiff fails to differentiate between the defendants.  Plaintiff's complaint instead lumps all of the defendants together and accuses every defendant of breaching all of the asserted fiduciary duties.[14]  As Defendant's point out, "[i]n the more than fifty pages of the Complaint which contains the headings "Defendants' Conduct," 'Material Misleading Statements,' and 'Defendants' Post Class Period Conduct,' Plaintiff does not mention even once defendants Van Horn, Williams, Garber, Forese, Farris, Hawkins, Lee, Whisnand or Winthrop."  Def. Br. at 19.  More importantly, Plaintiff fails to distinguish between the defendants in the five (5) Counts of the Complaint, again referring to all defendants collectively as "Defendants."  As a result, the allegations are so general that they fail to put each defendant on notice of the claims against them.  <u>See</u> <u>e.g.</u> <u>In re Providian Fin. Corp. ERISA</u>

---

[14]The Court notes that the Third Circuit, and many other circuits, have disavowed the so-called "group pleading doctrine," in the securities law context.  <u>See</u> <u>In re Digital Island Sec. Litig.</u>, 223 F. Supp. 2d 546, 553 (D. Del. 2002) (collecting cases rejecting the group pleading doctrine), <u>aff'd</u>, 357 F.3d 322 (3d Cir. 2004).  Defendants' contention that Plaintiff cannot rely on the group pleading doctrine in the ERISA context hinges largely on their argument that this case is nothing more than a securities action masquerading as an ERISA action.  <u>See</u> Def. Reply Br. at 4.  As discussed <u>supra</u>, the Court finds that the obligations imposed upon fiduciaries by ERISA must be construed consistently, rather than to be in conflict with, the securities laws. This Court need not determine whether ERISA countenances group pleading.  Instead, for the reasons discussed above, the Court finds that Plaintiff's allegations fail to provide Defendants with the requisite notice of their allegedly improper conduct, in contravention of Rule 8(a).  The Court's holding is limited to the facts of this case.

Litig., 2002 U.S. Dist. LEXIS 25676, *3-4 (N.D. Cal. Nov. 14, 2002) ("[P]laintiffs have lumped the various classes of defendants into an undifferentiated mass and alleged that all of them violated all of the fiduciary duties. The resulting cause of action is so general that it fails to put the various defendants on notice of the allegations against them."); In re McKesson, 2002 U.S. Dist. LEXIS 19473, *3 (N.D. Cal. Sept. 30, 2002) (dismissing with leave to amend because "the complaint is replete with overly general allegations pursuant to which nearly all defendants are generally alleged to be liable for all breaches of fiduciary duty, all the while failing to identify specific defendants who are liable for specific breaches of specific fiduciary duties"). Therefore, the Court will grant Plaintiff leave to amend the Complaint. See Ikon, 86 F. Supp. 2d at n.9 ("Even if the court were to rule [that Plaintiff failed to plead with sufficient specificity], the appropriate response would be to permit plaintiffs to amend the complaint) (citing Saporito v. Combusion Eng'g, Inc., 843 F.2d 666, 675 (3d Cir. 1988)); In re Providian Financial Corp. ERISA Litigation, 2002 U.S. Dist. LEXIS 25676 at *4 (granting leave to amend).

The Court notes Plaintiff's argument that, at this stage of the proceedings, he is unable to specify the conduct of each Defendant because "[m]uch of that information . . . is in Defendants' exclusive possession." Pl. Opp. Br. at 6, n.4. In Concha, the Ninth Circuit stated the "the circumstances surrounding alleged breaches of fiduciary duty may frequently defy particularized identification at the pleading stage" because "[t]hese facts will frequently be in the exclusive possession of the breaching fiduciary." Concha, 62 F.3d at 1503 (discussing the relaxation of Rule 9(b) when ERISA breach of fiduciary duty claims sound in fraud). However, the Court does not require Plaintiff to inject a level of specificity comparable to that required by Rule 9(b). Instead, the Court reiterates that the Complaint must be sufficient to put the Defendants' on notice of the

specific claims against them.  See e.g., In re CMS Energy ERISA Litigation, 312 F. Supp. 2d 898, 904 and 911 (E.D. Mich. 2004) (holding that ERISA breach of fiduciary duty allegations were sufficiently pled under Rule 8(a) where the complaint divided the named defendants into "fiduciary categories" and "each count identifies the defendants it makes allegations against" and "the heading of each cause of action describes the defendants against whom that count is asserted") (distinguishing McKesson, 2002 U.S. Dist. LEXIS 19473, and Crowley v. Corning, Inc., 234 F. Supp. 2d 222 (W.D.N.Y. 2002)).

2.    Plaintiff's Fraud Claims Against Kean and Abramovic Satisfy Rule 9(b)

In contrast, Plaintiff's allegations against Kean, Jr. and Abramovic sound in fraud and, therefore, must satisfy the heightened pleading standard of Rule 9(b).  See Ikon, 86 F. Supp. 2d at 488 (holding that allegations that ERISA fiduciaries misled plan participants or knowingly participated in or undertook to conceal information must comply with Rule 9(b)).  Specifically, the Complaint plainly alleges that Kean, Jr. and Abramovic concealed material information and engaged in a scheme designed to inflate NUI's stock price.  With respect to these allegations, the alleged breaches are the fraudulent acts.  Therefore, the Court concludes that Rule 9(b) applies.

The Court notes, however, that "[t]he Third Circuit has repeatedly cautioned that courts should apply [Rule 9(b)] flexibly, particularly when the information at issue may be in the defendants' control."  Ikon, 86 F. Supp. 2d at 488 (citing Seville Indus. Mach v. Soutmost Mach., 742 F.2d 786, 791 n.9 (3d Cir. 1984).  "The purpose of Rule 9(b) is to 'provide notice of the 'precise misconduct' with which defendants are charged and to prevent false or unsubstantiated charges."  Ikon, 86 F. Supp. 2d at 488 (quoting Rolo v. City Investing Co., 155 F.3d 644, 658 (3d Cir. 1998)).  The Court finds that Plaintiff's fraud allegations against Kean, Jr. and Abramovic are

21

sufficiently detailed to provided adequate notice of the claims against them.  Further, for the reasons discussed <u>supra</u>, the Court finds that Plaintiff has sufficiently alleged that NUI Corp. is an ERISA fiduciary with respect to the alleged fraudulent activity.  To the extent that Plaintiff intends to assert that other Defendants were complicit in the fraudulent activity, the Court will grant Plaintiff leave to amend to provide greater specificity as required by Rule 9(b).

       F.     <u>Plaintiff's Respondeat Superior Allegations Against NUI Are Sufficient</u>

Despite the pleading deficiencies discussed above, the Court finds that Plaintiff has sufficiently pled that NUI may be liable under the doctrine of respondeat superior.  Under ERISA, respondeat superior liability will be imposed on a principal "only when it had de facto control of its agent in order to control disposition of plan assets."  <u>Crowley v. Corning, Inc.</u>, 234 F. Supp. 2d 222, 228 (W.D.N.Y. 2002) (citing <u>Bannistor v. Ullman</u>, 287 F.3d 394, 408 (5th Cir. 2002)).  The Complaint states that "[d]uring the Class Period, NUI had effective control over the activities of its officers and employees, including their Plan-related activities."  Compl. ¶ 15.  Further, the Court has already determined that Plaintiff has sufficiently alleged that NUI acted as an ERISA fiduciary. Therefore, the Court finds that Plaintiff's respondeat superior claims survive the instant motion.

       G.     <u>Plaintiff's Retermination Allegations Must Be Dismissed</u>

Defendants also seek dismissal of Plaintiff's claims arising out of the alleged retermination scheme at Telecom, an NUI subsidiary.  In the securities action, the Court granted the defendants' motion to dismiss allegations arising out of this same purported retermination practice at Telecom. <u>See</u> <u>In re NUI</u>, 314 F. Supp. 2d at 400-01.  Reterminating involves routing interstate calls to lines in different states and then re-routing to an interstate line.  The company would then bill the customer at the more expensive rate for intrastate calls but account for them on the books as

interstate calls, thereby increasing profit margins.[15]  Id. at 400.  Plaintiffs allege that this practice artificially inflated NUI's stock price.  The Court dismissed the retermination allegations, emphasizing that "plaintiffs have not alleged that anyone has disputed the retermination practice or instituted legal proceedings to recoup the alleged illegal charges."  Id. at 401.  Therefore, the Court concluded that plaintiff had not alleged either damages or loss causation.

This Court need not determine whether an ERISA plaintiff must demonstrate loss causation because Plaintiff has failed to allege that Defendants knew or should known of the purported practice or that the Plan suffered damages as a result of the practice.  As Defendants point out, the Complaint only makes "fleeting references to the purported 'reterminating' practice at Telecom."  Pl. Br. at 21.  Further, this Court finds the court's reasoning in the securities action to be sound.  Because the alleged reterminating practice has never been disputed, earnings were never restated to account for the alleged inflation.  Thus, the Plan has not yet been harmed by the alleged retermination practice at Telecom.  It is not enough to argue that the income from the retermination will someday be subject to disgorgement.  See In re NUI Sec. Litig., 314 F. Supp. 2d at 401.  The fact remains that, until that happens, Plaintiff's damages are prospective.  Therefore, the Court concludes that the Plan cannot recover damages as a result of the purported retermination under any set of facts.  Accordingly, Plaintiff's retermination allegations must be dismissed.

H.    Plaintiff's Section 406 Claim Must Be Dismissed

In Count V of the Complaint, Plaintiff alleges that the Defendants' purchase (on behalf of the Plan) of artificially inflated NUI common stock constituted a Prohibited Transaction in

---

[15]The Court did not determine whether retermination is illegal.  Id. at 401 ("Assuming arguendo that retermination is illegal and defendants intentionally concealed the practice, plaintiffs do not allege that they have suffered any resultant loss.").

violation of ERISA Section 406, 29 U.S.C. § 1106(a) (2005).  Compl. ¶¶ 160-167.  Defendants'

argue that they are protected by the exemption provided by ERISA Section 408, 29 U.S.C. § 1108

(2005).  Section 408 provides that Section 406 does not apply to the acquisition by a plan of

qualifying employer securities if such acquisition is for "adequate consideration," no commission

is charged, and the plan is an eligible individual account plan.[16]  See 29 U.S.C. §1108(e) (2005).

Plaintiff counters that Section 408 does not apply here because the securities were purchased at

artificially inflated prices, rather than for "adequate consideration."  Plaintiff's argument cannot

succeed.

"[B]ecause § 406(a) characterizes *per se* violations, it should be interpreted narrowly."

Jordan v. Michigan Conference of Teamsters Welfare Fund, 207 F.3d 854, 858 (6th Cir. 2000)

(citing United Steelworkers of Am., Local 2116 v. Cyclops Corp., 860 F.2d 189, 203 (6th Cir.

1988)).  ERISA defines "adequate consideration . . . in the case of a security for which there is a

generally recognized market [as] . . .  the price of the security prevailing on a national securities

exchange."  See 29 U.S.C. § 1002(18).  In the present case, it is undisputed that the Plans

purchased the NUI securities at market price from a qualifying national securities exchange.

Therefore, Plaintiff's Section 406 claims must be dismissed.  See e.g. CMS, 312 F. Supp. 2d at 917

(rejecting argument that 408 exemption does not apply where securities were allegedly purchased

at artificially inflated prices because it was undisputed that the shares were acquired at market price

on the New York Stock Exchange).

---

[16]The Court will not address Defendants argument that Section 406(a) has no applicability
here because the stock was purchased on the open market, rather than from an interested party,
because, for the reasons discussed above, Section 408 applies.

I.    The Court Finds That Plaintiff May Only Pursue Relief Under ERISA
Section 1132(a)(2) On Behalf Of The CBE Plan And Defers Consideration
Of Whether Plaintiff May Pursue Damages On Behalf Of A Class of Plan
Participants

Defendants argue that Plaintiff seeks monetary relief unavailable to him under ERISA

because the alleged losses were suffered by participants rather than by the Plans.  Plaintiff counters

that he seeks to recover "on behalf of both the Plans and a Class of Plan participants."  However,

Plaintiff fails to specify which statutory sections allegedly authorize him to pursue such relief. Pl.

Opp. Br. at 29 (citing Compl. ¶¶ 4-6).

ERISA Section 1132(a)(2), authorizes a participant or beneficiary to seek relief on behalf of

the plan.  See ERISA § 1132(a)(2); see also Honeywell, 2004 U.S. Dist. LEXIS 21585 at *50-56

(holding that plaintiffs, participants in retirement and investment plans, may recover on behalf of

the Plan under Section 1132(a)(2)); Bona v. Barasch, 2003 U.S. Dist. LEXIS 4186, *27 (S.D.N.Y.

Mar. 20, 2003) ("Individual Plaintiffs who are suing on behalf of a class of plan participants also

can recover on behalf of the Funds if they represent a class made up of all Fund participants.").

Here, although the Plans are individual account plans, all NUI matching contributions were made

in NUI stock.  Therefore, the alleged fiduciary breaches would affect the Plans as a whole. See

Honeywell, 2004 U.S. Dist. LEXIS 21585 at * 6-7 and *52 (holding that plaintiff may pursue

claims on behalf of the plan under Section 1132(a)(2) where "Plaintiffs contributed funds to the

general trust fund held by the Plan, and those funds were allocated to subfunds with the Plan's

holdings in accordance with the Plaintiff's investment decisions [and] Honeywell paid matching

contributions for Plaintiffs' benefit into the Stock Fund portion of the Plan's holdings."); contra In

re Schering Plough Corp. ERISA Litigation., 2004 U.S. Dist. LEXIS 16265, *43 (D.N.J. Sept. 14,

2004) (holding that plaintiff could not state a damages claim on behalf of the plan under Section

1132(a)(2) because the alleged fiduciary breaches did not affect the Plan as a whole where the Plan

gave the Plan Participants sole discretion to invest their funds and did not make matching

contributions in company stock).  Further, the Supreme Court has emphasized that ERISA should

be construed expansively in favor of providing a remedy for aggrieved plaintiffs.  See Varity, 516

U.S. at 513-15 (construing Section 1132(a)(3)).  Although the damages at issue may be traced

directly to individual participants' accounts, the Court is unable to conclude, at this stage of the

proceedings, that the assets of the participants' accounts may in no way be considered Plan assets

for the purposes of Section 1132(a)(2).  See Honeywell, 2004 U.S. Dist. LEXIS 21585 at *51-52

("The fact that the assets at issue were earmarked or held for individual Plaintiffs does not alter the

fact that they were held by the Plan.  Similarly, the fact that Plaintiffs may have to show individual

reliance upon misrepresentations to prevail on some claims does not imply that they do not seek

recovery for the Plan: losses to the Plan may have resulted from decisions by individual

participants; but that does not mean that those losses were not losses to the Plan, it simply means

that some of the decisionmaking for Plan investments was conducted by the participants who

contributed to it."); see also In re Tyco Int'l, Ltd. Multidistrict Litig., 2004 U.S. Dist. LEXIS

24272, *30 (D.N. ("Although Defendants argue that the complaint seeks to recover for losses

suffered by participants rather than by the plans, the complaint plainly seeks to recover on behalf of

both the Plans and their participants.  Because the complaint seeks a form of relief that is available

under ERISA, [the court] decline[s] to dismiss the complaint on this basis.  Whether plaintiffs will

be able to prove that the Plans suffered cognizable losses and whether ERISA also permits

plaintiffs to recover for losses that were suffered only by participants are questions for another

day.").  Therefore, drawing all reasonable inferences in Plaintiff's favor, the Court concludes that

Plaintiff may pursue the requested damages under Section 1132(a)(2).

However, Plaintiff does not have standing to seek relief on behalf of the Salaried Plan

under Section 1132(a)(2) because he participated only in the CBE Plan.  See Def. Br. at 39 (citing

Compl. ¶ 2); see also Acosta v. Pacific Enterpr., 950 F.2d 611, 617 (9th Cir. 1991) (concluding that

plaintiff could bring an action for breach of fiduciary duty on behalf of a plan that he participated

in but lacked standing with respect to other plans in which he did not participate).  ERISA Section

1132(a)(1) restricts civil actions against plan administrators to a "participant or beneficiary."  See

Miller v. Rite-Aid Corp., 334 F.3d 335, 340 (3d Cir. 2003).  In the present case, the Salaried Plan's

policy language is unambiguous that Plaintiff is not eligible to participate.  Specifically, "[t]he

Salaried Plan specifically exempts from eligibility an employee, like Plaintiff, 'whose

compensation and conditions of employment are covered by a collective bargaining agreement . .

.'"  Pl. Reply Br. at 14.

Plaintiff argues that, "while [he] did not invest retirement monies in the Salaried Plan," as

an NUI employee he falls with a "broad view of participant standing under ERISA." See Pl. Opp.

Br. at 35-36 (citing Financial Inst. Retirement Fund v. Office of Thrift Supervision, 964 F.2d 142,

147 (2d Cir. 1992)).  However, the Third Circuit has made it clear that standing under ERISA must

be determined in reference to traditional concepts of standing.  See Miller v. Rite Aid Corp., 334

F.3d 335, 340-41 (3d Cir. 2003) (citing Vartanian v. Monsanto Co., 14 F.3d 697, 701 (1st Cir.

1994) ("In determining who is a 'participant,' for purposes of standing, the definition found in 29

U.S.C. § 1002(7) must be read in the context of traditional concepts of standing . . . The *ultimate*

*question is whether the plaintiff is within the zone of interests* ERISA *was intended to protect*.")

(emphasis in original).  Because Plaintiff's employment was governed by a collective bargaining agreement, he was not eligible to participate in the Salaried Plan.  Therefore, he could not prove, under any set of facts, that he suffered any injury as a participant in the Salaried Plan.[17]  Moreover, the Complaint fails to allege that Plaintiff was a participant in the Salaried Plan.  Therefore, the Court concludes that Plaintiff may not bring this action on behalf of the Salaried Plan under Section 1132(a)(2).

It is a totally different issue whether Plaintiff has standing to assert claims on behalf of the Salaried Plan as part of a class action.  The Court questions whether this action may be properly commenced as a class action.[18]  However, these issues are best resolved on a motion for class certification, particularly because the parties' briefs do not focus on these issues.  See e.g. Tyco, 2004 U.S. Dist. LEXIS 24272, *8 n.1 ("Plaintiffs plainly have standing to seek relief for their own injuries.  Whether they should also be permitted to represent a class that includes participants in related plans implicates prudential concerns that must be analyzed under Fed. R. Civ. P. 23."); In re McKesson, 2002 WL 31431588 at *18 ("The propriety of the class allegations, and the suitability of this action as a class action, is better left to be decided on a motion for class certification when the class issues can be more fully briefed and considered.").  Therefore, the Court will defer consideration of these issues until Plaintiff files a motion for class certification pursuant to Federal Rule of Civil Procedure 23.

---

[17]It is undisputed that Plaintiff was a participant in the CBE Plan.

[18]The Court declines to reach the related issue of whether Plaintiff can obtain the requested relief under  ERISA Section 1132(a)(3) because it is so intertwined with the class certification issues and should be addressed concurrently.  Specifically, the Court refrains from determining whether Plaintiff's requested monetary relief may be considered "equitable" relief for the purposes of Section 1132(a)(3).

III.     CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss the Complaint is granted in part and denied in part.  Specifically, the Court dismisses Plaintiff's retermination allegations and Count V of the Complaint.  Plaintiff is granted thirty (30) days leave to amend the Complaint to cure the pleading deficiencies discussed herein.  An appropriate form of order is filed herewith.


    s/ Garrett E. Brown, Jr.
GARRETT E. BROWN, JR., U.S.D.J.